**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| NEW BALANCE ATHLETICS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:22-CV-10170 |
| | ) | |
| v. | ) | |
| | ) | |
| PERUVIAN SPORTING GOODS S.A.C. | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION TO CONFIRM FINAL ARBITRATION AWARD

On February 11, 2021, an Arbitrator appointed by the International Centre for Dispute Resolution pursuant to the parties' arbitration agreement issued a Memorandum of Decision and Final Award (the "Final Award") in favor of New Balance Athletics, Inc. ("New Balance") against Peruvian Sporting Goods S.A.C. ("PSG") as well as two other parties. The Final Award incorporates by reference the Arbitrator's Memorandum of Decision and Partial Final Award entered on August 20, 2020 (the "Partial Final Award"). Both the Partial Final Award and the Final Award were based upon four days of testimony and the submission of nearly 300 evidentiary exhibits. The Arbitrator awarded New Balance $3,547,852.56, which includes the Arbitrator's determination of compensatory damages, pre-judgment interest, and attorney's fees. There are no grounds to vacate or modify the Final Award as against PSG. Indeed, PSG has not sought to vacate or modify the Final Award, and PSG's time to do so has expired. As a result, New Balance files this petition to confirm the Final Award against PSG in the amount of $3,547,852.56, and to further award post-judgment interest to New Balance, at the contractually mandated rate of 2 percent per month on New Balance's breach of contract claim award and the

statutorily mandated 1 percent per month on New Balance's tortious interference claim and attorney's fees and expenses award, for the entirety of the time PSG fails to remit payment on the Final Award.

## PARTIES

1.      Plaintiff New Balance is a corporation organized and existing under the laws of Massachusetts, and has offices located at Boston Landing, 100 Guest Street, Boston, Massachusetts 02135.  New Balance is in the business of designing, manufacturing, marketing, and distributing athletic footwear, apparel, and accessories.  Its footwear, apparel, and accessories are distributed all over the world.

2.      Defendant PSG is a company registered under the laws of Peru, with its registered office located at Carretera Panamericana KM, 1303 mz. B lote 4 Zofratacna, Tacna, Peru.

## BACKGROUND

3.      On January 1, 2013, New Balance and PSG entered into a three-year distribution agreement for the sale and distribution of New Balance's products in Peru (the "Agreement"). *See* Ex. 1 hereto.  The three-year term of the Agreement was subject to a one-year extension if the Agreement was not terminated by either party sixty days in advance of its scheduled termination on December 31, 2015.

4.      Almost immediately after signing the Agreement in 2013, PSG began failing to make the contractual payments it owed to New Balance.  *See* Ex. 2 annexed hereto at 4 (Partial Final Award).

5.      Specifically, the Arbitrator found that PSG failed to pay New Balance-affiliated factories for the products it had already received and taken possession of, which, as of August 2015, amounted to roughly $800,000 in past due product payments.  *Id.* at 5-6.  In addition, PSG

also failed to pay New Balance for the distribution fees that PSG owed pursuant to the Agreement. *Id.* PSG's issues caused it to demand extraordinary payment terms, to which New Balance relented in part. *Id.* at 5-6.

6.      From early 2014 onward, "PSG remained permanently in arrears with respect to its obligations"—often "significant[ly]" so. *Id.* at 4. By the end of the Agreement's initial three-year term on December 31, 2015, PSG's past-due balance ran into the hundreds of thousands of dollars. *See id.* at 6.

7.      Around this time, the owner of PSG, Rodrigo Ribadeneira, decided to wind down PSG, to transition its assets to a successor entity, and to enter any future agreement with New Balance in the successor entity's name. *See id.* To implement that plan, Ribadeneira incorporated Superdeporte in December 2015. *See id.* at 7. Superdeporte succeeded to PSG's business over the next several months, taking over all of PSG's clients, all of its wholesale operations, all of its New Balance inventory, and all of its intercompany debt, at which point PSG ceased all operations. *See id.*

8.      New Balance and PSG/Superdeporte attempted to negotiate a new distribution agreement into 2016, but the parties' relationship deteriorated. *See id.* PSG/Superdeporte "continued to demand changes in the draft while resisting requests that the document be signed subject to later revision." *Id.* Meanwhile, PSG "continued to accumulate substantial arrearages, entered into payment agreements, and failed to fulfill a number of them." *Id.*

9.      As a result, New Balance made arrangements with a different company, Deportes Sparta, to become its Peruvian distributor. *Id.*

10.     In June 2016, New Balance provided written notice to PSG, Superdeporte, and Ribadeneira that it would not extend the Distribution Agreement beyond its then-operative expiration date of December 31, 2016.  *Id.*

11.     In November 2016, Ribadeneira caused PSG to execute an agreement that assigned purported claims held by PSG against New Balance to Ribadeneira personally.  *See id.* at 8.

12.     In January 2017, Ribadeneira filed a lawsuit in Peru on the basis of these purported claims.  Proceeding on an *ex parte* basis, Ribadeneira convinced the Peruvian court to grant an injunction against New Balance from working with its new distributor.  *Id.*

13.     However, after New Balance had an opportunity to be heard, the Peruvian court dissolved the injunction.  Nevertheless, Ribadeneira's illegitimately procured injunction cost New Balance hundreds of thousands of dollars in lost sales and other damages. *Id.* at 8, 19-22.

14.     On July 31, 2018, New Balance initiated arbitration proceedings against PSG and Ribadeneira, pursuant to Paragraph 21 of the Agreement, which provides as follows:

> The parties agree that any and all disputes (whether in contract or any other theories of recovery) related to or arising out of this Agreement or the relationship, its application and/or termination (including post-termination obligations) shall be settled by final and binding arbitration in accordance with the UNCITRAL Arbitration Rules. . . . The arbitration shall be heard and determined by a single arbitrator. The place of arbitration shall be Boston, Massachusetts, USA.

15.     New Balance's claims in the arbitration included one contractual claim under the Agreement as well as a tortious interference claim.

16.     During the arbitration, Ribadeneira and Superdeporte objected to the Arbitrator's exercise of jurisdiction over them.

17.     At no point did PSG challenge or object to the Arbitrator's exercise of jurisdiction over it, much less the arbitrability of any jurisdictional questions.

18.     On August 20, 2020, the Arbitrator issued the Partial Final Award.  *See generally* Ex. 2.  The Partial Final Award resolved issues of liability.  PSG was found jointly liable with Superdeporte on New Balance's breach of contract claim, and jointly liable with Ribadeneira and Superdeporte on New Balance's tortious interference claim.  The Arbitrator reserved three issues in the Partial Final Award: awards of interest, attorney's fees and expenses.

19.     On February 1, 2021, Ribadeneira and Superdeporte—but not PSG—filed a petition to vacate and corresponding motion to vacate in *Ribadeneira v. New Balance Athletics, Inc.*, Civ. No. 1:21-cv-10173-ADB (D. Mass.).  *See* Ex. 4 annexed hereto (*Ribadeneira* filings and District Court's opinion).

20.     On February 11, 2021, the Arbitrator issued the Final Award, which reaffirmed and incorporated the Partial Final Award, and provided a final calculation of damages, including interest, attorney's fees, and expenses.  *See* Ex. 3.  New Balance was awarded attorney's fees and expenses from PSG, Ribadeneira, and Superdeporte "in accordance with the liabilities assessed against them." *Id.*

21.     In total, the Arbitrator awarded New Balance: 1) $851,768.60 in breach of contract damages, plus contractually mandated 2 percent interest per month, which the Arbitrator calculated through October 1, 2020 at a total of $929,225.43 in interest up to that date; 2) $215,736.71 in tortious interference damages, plus statutorily mandated 1 percent interest per month beginning on the date the claim was brought, May 3, 2019; and 3) $1,516,603.95 in attorney's fees and expenses.

22.     Ribadeneira and Superdeporte—but not PSG—then filed an Amended Petition and Amended Motion to Vacate the Arbitration Award in *Ribadeneira v. New Balance Athletics, Inc.* on February 22, 2021.  *See* Ex. 4.

23.     On September 27, 2021, the district court granted Ribadeneira and Superdeporte's motion to vacate.  *Id.*  The court denied New Balance's motion to dismiss and its cross-motion to confirm the award against Ribadeneira and Superdeporte.  *Id.*  New Balance has appealed those orders.  The court did not vacate or modify the award as to PSG.  *Id.*

24.     As of January 31, 2022, PSG has not filed any action or motion to vacate, modify, or correct the Partial Final Award or Final Award.

25.     As of January 31, 2022, PSG has not satisfied any monetary relief awarded in the Final Award.

## <u>JURISDICTION</u>

26.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

27.     This Court has personal jurisdiction over PSG as PSG engaged in commerce with New Balance, a party domiciled in this District.  Moreover, the underlying arbitration took place in this District, and PSG failed to raise any objection to jurisdiction during the pendency of those proceedings.

28.     Venue is proper in this District.  A significant portion of the events above—including the arbitration—took place in this District.

## **CONFIRMATION UNDER THE FEDERAL ARBITRATION ACT**

29.     New Balance brings this request under the Federal Arbitration Act, 9 U.S.C. § 9, which the district court previously found applicable to this matter, or alternatively under 9 U.S.C. § 207.[1]

30.     Section 9 states that within one year of the date of an arbitration award, any party may apply for a judicial order confirming the award, "and thereupon court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  Section 207 provides for confirmation "[w]ithin three years after an arbitral award . . . is made."  9 U.S.C. § 207.  Under either provision, the Petition is timely and there are no grounds for vacatur.

31.     The Final Award was rendered by an unbiased arbitrator, who gave all parties ample opportunity to be heard and present evidence, and who decided issues allocated to him under the Agreement.  PSG asserted no objections to the jurisdiction of the Arbitrator either during the arbitration or since then.  Because the Final Award has not, and should not, be vacated, modified, or corrected, the Court must confirm the Final Award.

32.     Pursuant to the Final Award, which incorporated by reference the Partial Final Award, PSG is liable for breach of contract and awarded $851,768.60 in principal and $929,225.43 in interest at the parties' contracted-for rate of 2 percent per month, calculating interest through October 1, 2020.  Since the Final Award was issued, interest has continued to

---

[1] In the related case *Ribadeneira v. New Balance Athletics, Inc.*, Civ. No. 1:21-cv-10173-ADB (D. Mass.), the court held that the Federal Arbitration Act—and not the Massachusetts Uniform Arbitration Act—applied. *See* Memorandum and Order, *Ribadeneira v. New Balance Athletics, Inc.*, Civ. No. 1:21-cv-10173-ADB (D. Mass. Sept. 27, 2021) ECF No. 37. New Balance is currently appealing that decision and does not waive its argument that the MUAA applies. However, in order to timely exercise its rights under 9 U.S.C. § 9, New Balance is bringing this petition at this time.

accrue at 2 percent per month pursuant to the Agreement's terms.  *See* Ex. 3 at 2.  New Balance is entitled to that additional interest, which continues to accrue due to PSG's failure to pay.

33.     Pursuant to the Final Award, which incorporated by reference the Partial Final Award, PSG is liable for tortious interference and awarded $215,736.71 in principal, and pre-judgment interest at the statutory rate of 1 percent per month.  Since the Final Award was issued, interest has continued to accrue at 1 percent per month pursuant to Massachusetts law (*see* Mass. G. L. c. 231, §§ 6B and 6H).  *See also* Ex. 2 at 25-26.  New Balance is entitled to that additional interest, which continues to accrue do to PSG's failure to pay.

34.     The Final Award further held PSG liable for New Balance's attorney's fees and expenses and awarded $1,516,603.95.  Since the Final Award was issued, interest has continued to accrue at 1 percent per month pursuant to Massachusetts law.  New Balance is entitled to that additional interest, which continues to accrue do to PSG's failure to pay.

WHEREFORE, New Balance respectfully requests that the Court (i) confirm the Final Award in the amount of $3,547,852.56 against PSG; (ii) enter an Order of Judgment that includes post-judgment interest in the amount of $779,287.88 as of the date of this filing with interest continuing to accrue thereafter at 2 percent per month on the breach of contract award, 1 percent per month on the tortious interference award, and 1 percent on the fees and expenses award, for a total of $53,288.47 per month; and (iii) such other further relief as is just and necessary.

Date:  February 1, 2022                          Respectfully submitted,

                                                 NEW BALANCE ATHLETICS, INC.

                                                 By its counsel,

                                                 */s/ Mark E. Tully*
                                                 Mark E. Tully (BBO# 550403)
                                                 Kate E. MacLeman (BBO# 684962)
                                                 Dylan Schweers (BBO# 698461)
                                                 Goodwin Procter LLP
                                                 100 Northern Avenue
                                                 Boston, Massachusetts 02210
                                                 Tel.: 617.570.1000
                                                 Fax.: 617.523.1231
                                                 MTully@goodwinlaw.com
                                                 KMacLeman@goodwinlaw.com
                                                 DSchweers@goodwinlaw.com

## CERTIFICATE OF SERVICE

Counsel for New Balance further certifies that the foregoing document will be served upon the Defendant pursuant to FRCP 4.

                                                 */s/ Mark E. Tully*